# Attachment A

4462

SUPERIOR COURT OF NEW JERSEY
ATLANTIC COUNTY/CIVIL DIVISION

-----------------------------X
THOMAS CONA AND JOYCE CONA, DOCKET NO. ATL-L-3553-05MT
PLAINTIFFS,
VS.
MERCK & CO.,INC.,
DEFENDANT.
-----------------------------X
JOHN MCDARBY, DOCKET NO. ATL-L-1296-05MT
PLAINTIFF,
VS.
MERCK & CO., INC.,
DEFENDANT.
-----------------------------X

PLACE: ATLANTIC COUNTY CIVIL COURTHOUSE
1201 BACHARACH BOULEVARD
ATLANTIC CITY, NJ 08401
DATE: APRIL 6, 2006

B E F O R E:

THE HONORABLE CAROL E. HIGBEE, P.J.Cv.

TRANSCRIPT ORDERED BY:
MARK LANIER, ESQUIRE
CHRISTY D. JONES, ESQUIRE

A P P E A R A N C E S:
MARK LANIER, ESQUIRE
LANIER LAW FIRM
BENEDICT P. MORELLI, ESQUIRE
MORELLI RATNER, P.C.
ATTORNEYS FOR PLAINTIFF CONA
ROBERT GORDON, ESQUIRE
JERRY KRISTAL, ESQUIRE
ELLEN RELKIN, ESQUIRE
WEITZ & LUXENBERG
ATTORNEYS FOR PLAINTIFF MCDARBY

CHRISTY D. JONES, ESQUIRE
BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
KEVIN J. DUNNE, ESQUIRE
SEDGWICK, DETERT, MORAN & ARNOLD, LLP
ATTORNEYS FOR THE DEFENDANT

* * * * * *

REGINA A. TELL, CSR-CRR-RPR
OFFICIAL COURT REPORTER
1201 BACHARACH BOULEVARD
ATLANTIC CITY, NJ 08401

4463

I N D E X


| WITNESS(S) | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| FOR THE PLAINTIFF | | | | |
| 1). RAYMOND V. GILMARTIN | | | | |
| By Mr. Lanier | 4535 | | 4677, 4707, 4728 | |
| By Ms. Jones | | 4638 | | 4700, 4727, 4729 |
| Juror Questions 4717 | | | | |

MS. FREIWALD: The next suggestion -- our next changes were purely grammatical, just for clarification.

THE COURT: Under "Finally" --

MS. FREIWALD: In the next two paragraphs, we removed the word "consider" twice. It is not a

4488

substantive change, it is a merely a word.

THE COURT: "In determining the amount," that's grammar.

MS. FREIWALD: "In determining the amount," no. It is where you get to after the semicolon, you had "consider" and "consider," and it was confusing as it read. We thought it read better if you took out "consider" in two places.

THE COURT: All right. I'll look at those two.

MS. FREIWALD: The next substantive change is in the paragraph that ends "Finally."

THE COURT: "You should make sure there's a reasonable relationship."

MS. FREIWALD: "To the plaintiff."

THE COURT: Yes. That's good. I'll add that. I think that's appropriate.

MS. FREIWALD: "The amount of any punitive damages awarded."

THE COURT: Okay. I'll add that.

MS. FREIWALD: And we added a sentence, "It is not appropriate to award punitive damages for conduct unrelated to the harm suffered by the plaintiff."

MR. LANIER: No, no, no, no, no.

MR. LIFLAND: That's from State Farm. That's

4489

the principle of the law.

MS. RELKIN: What page are you on?

MR. LANIER: Page 10 of the charge.

MS. RELKIN: First of all --

MR. LANIER: She wants to add a sentence after the top paragraph ends. She wants to insert a sentence.

THE COURT: "It is not appropriate to award punitive damages for conduct unrelated to the harm suffered by the plaintiff."

MS. FREIWALD: That's a State Farm --

MS. RELKIN: There's absolutely no ruling that State Farm -- that we have the State Farm issue. In New Jersey, we have a cap on liability. We have -- the Court is statutorily required to review the reasonableness of the award under the Punitive Damages Act. There's no reason to inject, you know, a snippet from a different case.

MR. LANIER: And what is more is because we have the statute, we're only going to be putting evidence in that is material and related. I mean, this isn't a case where we're going to be putting evidence in about, gee, look what Merck did with Singulair, or, gee, look what they did with Fosamax.

By definition, everything going in is already

4490

related. That would be -- the jury doesn't need to be instructed in that. You're not going to let in irrelevant evidence.

THE COURT: I'm going to take it out. I do

think it doesn't -- if anything, I think it is confusing as to what we're talking about. I mean, the jury hasn't read State Farm.

MS. RELKIN: Lucky them.

THE COURT: And I think it just -- I don't think it clarifies anything. I don't think it changes anything. I just think it is confusing and not helpful to them.

Anything else?

MS. FREIWALD: The last change was in the summary.

THE COURT: "Based on the law I have just given you."

MS. FREIWALD: Yes.

THE COURT: "If any." I'll make those changes.

MS. FREIWALD: Okay.

THE COURT: Any other changes from the plaintiff's side?

MS. RELKIN: I wanted to see the summary language.

4491

THE COURT: There's no objection to the questionnaire other than I guess the -- your objection that there shouldn't be a question about justify or --

MR. LANIER: That's okay.

MS. RELKIN: On question two, "Does the wrongdoing by Merck justify punitive damages, maybe "Does the wrongdoing as defined by the Court in the charge" so they know what wrongdoing you're talking about, as opposed to in a vacuum.

Leave it?

MR. LANIER: It is okay.

THE COURT: They have the charge first. The questions can be as long as we want them to be. You can incorporate the entire charge into the question.

MS. FREIWALD: I do want to note for the record, Judge, our objection to the part of the charge that asks for a consideration of wealth. Our position on that is that that's only relevant in a case where the ability to pay is really at issue. It is just a potential inflammatory element in this case, and, frankly, raises the potential for the amount of punitive damages to be unrelated to the specific harm suffered by Mr. McDarby or the particular conduct at issue in New Jersey.

THE COURT: Do you have any case that says

4492

that?

MS. FREIWALD: That would be related to State Farm.

THE COURT: It is an interesting argument that the reason they know what the wealth is is so they don't overcharge the defendant.

MR. LANIER: But I would venture to say --

THE COURT: But could you also say, don't punish somebody who makes -- you don't punish somebody if, you know, it is the slap on the wrist?

MS. FREIWALD: Wealth is clearly an aggregate number. It is unrelated to the conduct at issue. It is to look at the --

MR. LANIER: I disagree.

THE COURT: Well, I'm not going to do that --

MR. LANIER: Good.
THE COURT: -- unless you have a case that tells me I should.
MS. RELKIN: It is right in the statute. It is mandatory.
MR. LANIER: We won.
MR. LIFLAND: We would cite State Farm on that point. There are also several cases out there. One that comes to mind is the Seventh Circuit case called Zazoo vs. Loreal -- I'll have to get you the

4493

citation -- which explains why in the case of corporations, this notion that the bigger the amount, the more a deterrent is not a reasonable notion.
THE COURT: It isn't? If that's their argument, then I don't think I agree with that decision.
MS. RELKIN: This is in the Seventh Circuit.
MR. LIFLAND: I'm stating a case.
THE COURT: I'm not belittling the fact that --
MR. LIFLAND: It is potentially prejudicial when it is only there to inflate the award. It comes out of State Farm, as well, which is a United States Supreme Court case.
THE COURT: I have said this before, and I'll say it again. New Jersey jurors are generally conservative. They're generally very cautious. I don't see them being overly impressed by -- they know that Merck is a big company, and they know they make a lot of money. I think it is important for them to have some guidance and, more important, it is part of the statute. It is required, I think.
MR. LANIER: Yes.
When you finish the charge, I have three quick matters.

4494

THE COURT: Okay. We're done with the charge, I think.
MS. RELKIN: Just one. I know we had discussions off the record with regard to defendant's motion on preemption and plaintiffs' response. Just to put it -- I don't remember if we did anything on the record or not.
THE COURT: All right. Well, the motion on preemption is denied. I will be submitting a memorandum of decision in much more detail to you, but basically, I do not believe that Buckman has the broad implications that the defense believes that it does. I think that Buckman was a very unique, unusual case that involved attempt to enforce FDA regulations very specifically, and it was not a decision that really gels with other decisions and certainly doesn't gel with anything that the New Jersey court has upheld, which is that the FDA standards are minimum standards. They exist for punitive damages. They're more than minimum, but for compensatory, and for that they are still -- we have a very specific requirement that I think is an appropriate requirement under the law. And I don't think Buckman changes that.
MS. RELKIN: We agree we didn't submit a Buckman brief. We relied on the prior briefing from

4495

Humeston, which addressed that issue. And just for the record, since defendant took the position -- not in the context of a punitive motion, but in the context of --
THE COURT: I did receive one.
MS. RELKIN: -- in the context of the early in limines. And just for the record, since defendant took the position from the motion they filed yesterday that it is preempted, we believe a very reasonable response, if the Court was to rule in their favor, which you haven't, is that you revert to the Punitive Damages Act, and there's --
THE COURT: So if you vacate the PLA statute as to damages, you would just go back to the punitive common law; not common law, the punitive damage statute.
MS. RELKIN: Yes.
THE COURT: I understand that the defense thinks that that's totally wrong, that you would just not award punitive damages.
MS. FREIWALD: We also think Miss Relkin doesn't read our motion accurately.
THE COURT: I also understand that your argument is that the punitive damage -- the PLA statute does not have to be void in order to say that it is not enforceable here.

4496

MR. LIFLAND: Correct.
MR. LANIER: Three issues, if I might, Judge.
Issue number one, I would like to urge an oral motion in limine, if y'all permit such, on Mr. Gilmartin. We do have one juror who is black, and Mr. Gilmartin is fond of pointing out that he served as the head of the NAACP as the only white man to do it for some amount of time. I would ask that that not be delved into by Merck as they talk about who he is and his good things.
MS. RELKIN: And we included that in our written motion on good acts, company good acts, and I don't know if it was specifically addressed, but our motion was granted, so I think it comes --
MR. LANIER: I want to make sure we're okay on that.
THE COURT: That was a specific order that's already been entered that indicated, that mentioned -- I don't think it talked about the NAACP, but it talked about his support of the United Negro College Fund, and I indicated that that shouldn't be discussed.
The motion also said very broadly that his mumble beginnings or any other background information shouldn't be discussed, and I indicated that I thought that that was not appropriate. There should be some

4497

background on the individual, and, certainly, when we're getting into punitives, we can be more liberal on the issues of his concern for patients and things like that, because he is not a doctor, but he is running a pharmaceutical company, so his background is appropriate. But the fact that he is involved with the United States Negro Fund, particularly where we have an African American juror, I think is not appropriate, so those two things don't have to be mentioned.
The NAACP --
MR. LANIER: And the responsive side of that.

THE COURT: I'm sure there's other things in his background that you can bring out that are positives, good things he has done. I'm sure he has other works or things that he does.

MS. JONES: I understand Your Honor's ruling, but I simply don't wish to by our silence signify acquiescence in that.

THE COURT: There was a motion in limine, and you did oppose it already.

MS. FREIWALD: We also might note that in the course of the trial, the plaintiffs elicited evidence with regard to their clients' humble beginnings.

THE COURT: And you may bring out Mr. Gilmartin's humble beginnings. That's what I just

4498

said. They didn't elicit -- that is something that might directly affect an individual juror, and I didn't allow them where I -- or I said that I would not allow it, and it turned out it didn't matter, because Krumholz hadn't decided if he was donating anything.

But I specifically said he could not say he was going to donate the money to the Atlantic City Medical Center because -- and I said if Egilman or any of the others took the stand, they could not say that, because that's directly influencing specific jurors. I mean, it could be.

There's people who have been treated there or may be treated there, and I wasn't going to allow something that might touch on a specific juror. And I think that it is possible that being involved with African American civil rights support would be sort of pandering to one juror.

That's all. The ruling is over. It is done. That doesn't mean you can't discuss his humble beginning or other good things that he did.

MR. LANIER: Next point, Your Honor.

I believe, if I'm not mistaken, you may have said this -- it might be appropriate on punitive damages, but not actuals. I don't know if you said that or not, but I certainly think that it is

4499

absolutely dead-on appropriate, and that's the Fries letter.

Here is my point on the Fries letter. What I have to prove under malicious or willful and wanton is not only a likelihood of harm, but the defendant's awareness and reckless disregard, and then what follow-up conduct was done and what the duration was for this type of conduct.

If you look at the Fries letter itself, the Fries letter is actually addressed to Ray Gilmartin, and it is a letter that puts Ray Gilmartin on notice about some allegations that are being made, whether truthful or not, but allegations being made about his company and some deeds being done by his company.

Specifically, Ray Gilmartin is put on notice that Dr. Fries received a call at home from a vice-president of Merck pharmaceuticals.

Ray Gilmartin is put on notice that there were broader issues at an American College of Rheumatology meeting involving suppression of data by Merck in a consistent pattern of intimidation by investigators, by Merck staff.