**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **JENINE VON ESSEN,** <br><br> **Plaintiff,** <br><br> **vs.** <br><br> **DAVOL INC.,** <br> **a Rhode Island Corporation;** <br> **C.R. BARD, INC.,** <br> **a New Jersey Corporation;** <br><br> **Defendants.** | ) | **NO.: 06-cv-04786-SDW-MCA** |

**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Defendants, as a means to usurp Plaintiff's state law tort claims, continue to argue that Plaintiff's claim for punitive damages under N.J.S.A. § 2A:58C-5(c), raises an actual disputed and substantial federal question so as to remove this matter to federal court. Plaintiff respectfully argues that Defendants' claims are without merit.

1. **Defendants' Broad and Expansive Interpretation of 28 U.S.C. § 1441(b) is Inconsistent With Well-Established Principals of Federal Question Jurisdiction.**

In support of their argument, Defendants cite to *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 311-12 (2005), for the proposition that "federal question jurisdiction will lie over state-law claims that implicate significant federal issues." Defendants would have this Honorable Court believe that the mere "implication" of federal issues is the only requisite to invoke federal question jurisdiction under this Court's original jurisdiction, 28 U.S.C. § 1331.[1] Such argument is misguided.

[1] In doing so, Defendants have failed to address decades of sound jurisprudence pertaining to the basis for federal question jurisdiction, *see e.g. Airco Indus. Gases, Inc.*

Examination of the various *Grable* principals demonstrates that the inquiry is significantly more substantive than that articulated by Defendants. As the Supreme Court in *Grable* set forth, "such federal jurisdiction demands ***not only*** a contested federal issue, but a ***substantial one*** ... and the jurisdiction ***must be*** consistent with congressional judgment about the sound division of labor between state and federal courts governing § 1331's application." *Id.* at 311-12 (emphasis added).

In fact, the cases cited by Defendants for the proposition that federal courts have "acknowledged [a] broader scope of 'arising under' federal question jurisdiction" are inapplicable and distinguishable from the matter *sub judice*. For example, in *Municipality of San Juan v. Corporacio Para El Fomento Economico De La Ciudad Capital*, 415 F. 3d 145 (1st Cir. 2005), the issue of federal question jurisdiction was ancillary to the more substantive issue of whether a district court order for arbitration may be deemed a "final" judgment. *Id.* at 148.

To the extent the court in *Municipality of San Juan* assessed federal question jurisdiction, it relied primarily upon the averments set forth in the plaintiff's complaint, namely finding that the "Municipality [had] amended its complaint to draw a more explicit link between its allegations and the federal interest in ensuring compliance with

---

*v. Teamsters Health & Welfare Pension Fund*, 850 F.2d 1028, 1033 (3rd Cir. 1988) (holding that "the mere implication or existence of federal law does not automatically confer federal jurisdiction.") and the well-established standards courts have employed to assess proper removal to federal court, *see e.g. Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3rd Cir. 1990) (holding that "federal removal statutes are to be strictly construed and all doubts regarding removal are to be resolved in favor of remand). Defendants similarly discount the jurisprudence pertaining to the notion that defensive preemption cannot serve as a basis for federal question jurisdiction. *See e.g. Dukes v. U.S. Healthcare, Inc.* 57 F.3d. 350, 353 (3rd Cir. 1995); *Township of Greenwich v. Mobil Oil Corporation*, 504 F.Supp. 1275, 1277 (D. N.J. 1981).

the comprehensive framework of regulations governing recipients of federal block grant funds." *Id.* In the matter herein, Plaintiff's Complaint is wholly dissimilar and is devoid of any averments concerning explicit violations of federal law.[2]

Similarly, in *Broader v. Cablevision Systems Corp.*, 418 F.3d 187 (2nd Cir. 2005), a case cited by Defendants, the court determined that the plaintiff customer's breach of contract claims raised federal questions as to whether the providers violated competition and uniform rate laws as set forth under the Communications Act of 1934, § 623(d), *as amended*, 47 U.S.C.A. § 543(d). In stark contrast to Defendant's articulation of the case, the court in *Broader*, in applying the *Grable* factors, relied solely upon the averments of plaintiff's complaint. *Id.* at 196 (finding that "the complaint in this case ... satisfies all three prongs of the *Grable* test for federal-question removal jurisdiction). Unlike the defendants in *Broader*, it is Plaintiff's contention herein that Defendants have failed to demonstrate the existence of all three of the *Grable* factors on the basis of the averments in Plaintiff's well-pleaded Complaint.

In *Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227 (10th Cir. 2006), involving a land dispute between owners and a rail-road company, the basis for the court's finding of federal question jurisdiction stemmed from the fact that the land owner's fee interests were dependant upon "Union Pacific's rights under section 2 of the Pacific Railroad Act of 1862." *Id.* at 1234. In making such a legal determination, the court in *Nicodemus*, applied the *Grable* factors in a significantly meaningful way by actually citing to a

[2] Coincidently, Defendants have failed to cite to or otherwise specify on the face of Plaintiff's well-pleaded complaint, any federal statute seemingly relied upon in support of Plaintiff's claims for punitive damages. In fact, Plaintiff does not seek any form of relief under the Federal Food, Drug, and Cosmetic Act (hereinafter "FDCA"), 21 U.S.C. § 321

federal statute as a source of invoking federal question jurisdiction. In the matter herein, Defendants have failed to clearly identify the source, if any, of a statutory basis for federal jurisdiction. It is important to note that the *Nicodemus* court did recognize "that the presence of a federal issue, however, is not necessarily 'a password opening federal courts to any state action embracing a point of federal law'" (citing to *Grable* at 2368). In discussing the Grable factors, the *Nicodemus* court also acknowledged that, there may exist,

> [W]ant of a substantial federal question ... when the federal question is (1) wholly insubstantial or obviously frivolous, (2) foreclosed by prior cases which have settled the issue one way or another; or (3) so patently without merit as to require no meaningful consideration.

*Id.* at 1236 (citations omitted).

It is Plaintiff's contention that the matter herein is surely want of a substantial federal question.

Defendants also cite to *In re Zyprexa Products Liability Litigation*, 375 F. Supp. 2d 170 (E.D.N.Y. 2005), as an example where federal courts have taken an expansive view of federal question jurisdiction. Contrary to Defendants' articulation of the case, the court was clear to reason that federal question jurisdiction was proper only where "the substantial federal funding provisions involved and the allegations about the violation of federal law through improper off-label use present a core of substantial issues more federally oriented than those in *Merrell Dow*." *Id.* at 172.[3] Accordingly, such case is

---

et. seq., the Medical Device Amendments of 1976, which amended the FDCA, 21 U.S.C. 360-360rr (hereinafter "MDA"), or any other federal statute for that matter.

[3] In fact, the court was equally cognizant in recognizing that the Supreme Court in *Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804 (1986), had recognized "that a state court action against a drug manufacturer, based in part on a theory implicating the Food and Drug Administration, *did not* present a federal question, so that

similarly distinguishable from the matter herein, where Plaintiff has not made allegations of federal funding or improper off-label use.

Last, Defendants disingenuously cite to *Smith v. Kansas City Title & Trust* Co., 255 U.S. 180 (1921), for the proposition that expansive federal question jurisdiction is historically rooted in legal jurisprudence. A closer examination of *Smith* reveals that at issue in the case, was not the issue of federal question jurisdiction, but whether states could tax certain municipal bonds. After determining that such taxing power resides solely with Congress under Section 6 of the applicable Act of July 17, 1916, the *Smith* court concluded that states could not impose taxes on such bonds, albeit acknowledging that "no objection is made to the federal jurisdiction, either original or appellate, by the parties to this suit." *Id.* at 244.

In summary, the myriad of cases relied upon by Defendants only addressed federal question jurisdiction as an ancillary rather than substantive issue. Additionally, in those cases where the courts may have assessed the existence of federal question jurisdiction, it is clear that such determination was made only after a rigorous and thorough application of the *Grable* factors. Additionally, these courts attempted in a meaningful and articulate way, to find some nexus to an explicit federal statute or federal claim, as set forth in the face of the complaint.

---

removal of the action to federal court was improper." *In re Zyprexa Products Liability Litigation*, at 172.

**2. Defendants' Proposition that any Evidence of Withholding of Information From the FDA Under New Jersey's Punitive Damages Law Necessarily Presents a Federal Question is Misguided.**

Defendants also argue that Plaintiff's claims for punitive damages invokes a substantial federal question under the auspices of *Buckman Co. v. Plaintiffs' Law Committee*, 531 U.S. 341, 348 (2001). Relying on cases such as *Kobar v. Novartis Corp.*, 378 F. Supp. 2d 1166, 1171-72 (N.D. Ariz. 2005) (determining that Arizona's immunity law to drug manufacturers under A.R.S. § 12-701(B) was preempted by federal law) and *Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961 (6th Cir. 2004) (finding that Michigan's immunity law under M.C.L. § 2946(5)) was similarly preempted), Defendants would have this Court adopt a similar sweeping *per se* rule that any state statute that may involve a state court's determination that a particular defendant company withheld information from the Federal Food & Drug Administration (hereinafter "FDA") conflicts with federal law and is therefore preempted. Such sweeping and broad legal conclusion is wholly without merit.

In fact, Defendants' argument was recently rejected in *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85 (2nd Cir. 2006). In *Desiano*, drug manufacturers relying on the same argument as Defendants, attempted to posit that plaintiff's claims were "foreclosed" under Michigan's immunity law under M.C.L. § 2946(5)[4] and under the basis of *Buckman*. *Id.* at 88.

In distinguishing plaintiff's claims from those asserted in *Buckman*, Judge Calabresi noted that the plaintiff's were "not pressing 'fraud-on-the-FDA' claim … rather

---

[4] Similar to New Jersey's Punitive Damages Law, N.J.S.A. § 2A:58C-5 (c), Michigan's drug immunity law under M.C.L. § 2946(5), imposes liability where the defendant company withheld or misrepresented information from the F.D.A.

were ***asserting claims that sound in traditional state tort law.***" *Id.* at 94 (emphasis added). Citing to *Buckman*, the *Desiano* court was clear to point out that "the source and 'vintage' of the duty the [manufacturer] is accused of breaching in 'fraud-on-the-FDA' claims is ***different*** from the source and 'vintage' of the duty that obtains in traditional tort claims." *Id.* (emphasis added). Following these distinguishing factors, the *Desiano* court concluded that *Buckman* was inapposite and therefore inapplicable. As the *Desiano* court so aptly reasoned,

> Significantly, all of the claims advanced by [plaintiffs] in this case are premised on traditional duties between a product manufacturer and Michigan consumers. ***None of them derives from, or is based on, a newly-concocted duty between a manufacturer and a federal agency.*** As a result, were we to conclude that [plaintiffs'] claims were preempted, we would be holding that Congress, without any explicit expression of intent, should nonetheless be taken to have modified (and, in effect, gutted) traditional state law duties between pharmaceutical companies and their consumers. We see no reason, nor can we identify any precedent, to justify such a result.

*Id.* at 94-95 (emphasis added).

To further support that *Buckman* did not preclude plaintiffs from asserting common state tort law claims, the *Desiano* court set forth that "the plaintiffs' claims … 'parallel federal safety requirements' ***but are not premised principally (let alone exclusively) on a [manufacturer's] failure to comply with federal disclosure requirements*** … on the contrary, the plaintiffs' complaints alleges a wide range of putative violations of common law duties long-recognized by [the state's] tort regime." *Id.* at 95 (emphasis added). Accordingly, the court concluded that "Buckman ***cannot be read as precluding such preexisting common law liability*** based on other wrongs, even when such liability survives only because there was also evidence of fraud against the FDA." *Id.* at 95 (emphasis added).

Similar to the court's reasoning in *Desiano*, New Jersey's Punitive Damages Law under N.J.S.A. § 2A:58C-5(c) parallel federal safety requirements and is premised on a duty between Defendant manufacturers of the Composix® Kugel® Hernia Patch and consumers. In addition, an examination of all the elements embodied under N.J.S.A. § 2A:58C-5(c), demonstrates that Plaintiff's claims for punitive damages are also "not premised principally (let alone exclusively)" on Defendant's failure to comply with federal disclosure requirements. *Desiano* at 95.

There also needs to be a judicial determination that the manufacturer's actions were "material and relevant to the harm [to plaintiff] in question." *See* Plaintiff's Memo at pp. 13-16 (citing to Section 5 of New Jersey's Punitive Damages Act). The New Jersey court in imposing punitive damages must consider all relevance evidence, as set forth under N.J.S.A. 2A:15-5.12 (discussing likelihood of harm, reckless disregard, and duration of conduct). As argued by Plaintiff, these are all discreet findings that have no anchor to federal law, but are embodied under New Jersey's common law jurisprudence concerning the imposition of punitive damages.

**3. Conclusion**

Based upon the foregoing, Plaintiff respectfully requests that this Honorable Court grant her Motion to Remand.

BY: ______________________

Harris L. Pogust, Esquire
Derek T. Braslow, Esquire
Robert N. Wilkey, Esquire
POGUST & BRASLOW, LLC
Eight Tower Bridge
161 Washington Street, Suite 1520
Conshohocken, PA 19428

**Dated: December 6, 2006** **Attorneys for Plaintiff**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **JENINE VON ESSEN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.: 06-cv-04786-SDW-MCA** |
| | ) | |
| **DAVOL INC.,** | ) | |
| **a Rhode Island Corporation;** | ) | |
| **C.R. BARD, INC.,** | ) | |
| **a New Jersey Corporation;** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

I, Sharon Tolton, Paralegal, hereby certify that on December 6, 2006, I electronically filed a true and correct copy of the foregoing *Plaintiff's Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion to Remand* on behalf of the Plaintiff upon counsel listed below:

*Kirby T. Griffis, Esquire*
*Dana Alan Gausepohl*
*SPRIGGS & HOLLINGSWORTH*
*1350 I Street, N.W.*
*Washington, D.C. 20005*

*David J. Cooner, Esquire*
*McCarter & English, LLP*
*Four Gateway Center*
*100 Mulberry Street*
*Newark, NJ 07102*

**Dated: December 6, 2006**

**By:** [signature]
**Sharon Tolton/Paralegal**
**POGUST & BRASLOW, LLC**
161 Washington Street, Suite 1520
Conshohocken, PA 19428
Telephone: (610) 941-4204
Facsimile: (610) 941-4245
**For the Plaintiff Jenine Von Essen**