UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VON ESSEN | |
| Plaintiff, | Honorable Madeline Cox Arleo |
| v. | Civil Action No. 06-4786 (SDW) |
| C.R. BARD, INC., ET AL. | **REPORT AND RECOMMENDATION** |
| Defendants. | |

This matter comes before the Court upon the motion of plaintiff, Jenine Von Essen, to remand the pending matter to Superior Court of New Jersey. Defendants oppose the Motion to Remand on the grounds that plaintiff's claim for punitive damages under New Jersey's Punitive Damages Act, N.J.S.A. § 2A:15-5.9 et seq. ("NJPDA") raises a federal question. For the reasons set forth below, it is respectfully recommended that plaintiff's motion to remand be granted.

**Background**

On September 11, 2006, plaintiff filed this action in Superior Court of New Jersey, Law Division, asserting common law claims as well as claims under New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8-1 et seq. ("NJCFA"), New Jersey's Product Liability Act, N.J.S.A. § 2A:58C-1 et seq. ("NJPLA"), and the NJPDA against defendants Davol, Inc. and C.R. Bard, Inc. Plaintiff alleged damage resulting from the use of a product called "Composix Kugel Hernia Patch." Plaintiff sought compensatory and punitive damages. On October 2, 2006, defendants removed the matter to federal court. Defendants claim that plaintiff's claim for punitive damages

under the NJPDA raises a federal question because she asserts that defendants intentionally withheld information from the Federal Food and Drug Administration ("FDA"). See Complaint, ¶ 50.

Plaintiff argues that the Court should remand the case because (1) no federal question is presented on the face of plaintiff's well-pleaded complaint; (2) defensive preemption may not serve as a basis for federal jurisdiction; and (3) defendants have not demonstrated a "disputed and substantial" federal issue. Defendants, on the other hand, contend that this essential element of the NJPDA presents a federal issue warranting federal jurisdiction.

**Legal Standard for Removal**

As a preliminary matter, a district court has subject matter jurisdiction to hear claims "arising under the Constitution, laws, or treaties of the United States" pursuant to 28 U.S.C. § 1331. A case brought in state court may be removed to federal court if the federal court would have had original jurisdiction over the action. 28 U.S.C. § 1441. Thus, only if a case could have originally been filed in federal court, may it be removed to federal court. Therefore, a party may seek to remand a civil action back to state court based on an alleged defect in the removal procedure, or lack of subject matter jurisdiction. 28 U.S.C. § 1447(c). The party opposing remand must then show that removal was proper, since all doubts will be resolved in favor of remand. Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990), cert. denied, 498 U.S. 1085 (1991).

Typically, the pleading determines whether a complaint is subject to federal law. The Supreme Court has stated: "It is long settled law that a cause of action arises under federal law only when plaintiff's well-pleaded complaint raises issues of federal law." Metropolitan Life

Insurance Co. v. Taylor, 481 U.S. 58, 63 (1987). The fact that plaintiff's state law claims may be preempted by federal law is insufficient to confer federal question jurisdiction. Dawson v. Ciba-Geigy Corp., 145 F. Supp. 2d 565, 568 (D.N.J. 2001). Thus, "removal is not proper if based on a defense or an anticipated defense which is federal in nature, even if both parties admit that the federal defense is the only real question in the case." Id.

**Preemption Versus "Arising Under" Jurisdiction**

At the outset, it is important to distinguish between "complete preemption" and "ordinary preemption." Although normally federal preemption does not permit removal, "in certain circumstances the preemptive force of federal law is so powerful that it completely displaces any state law cause of action, and leaves room only for federal law for purposes of the 'well-pleaded complaint' rule." Id. Thus, the doctrine of complete preemption permits removal of an action to federal court when: (1) a federal statute wholly displaces a state law cause of action and creates a superseding cause of action, and (2) there is a "clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." Railroad Labor Executives Ass'n v. Pittsburg & Lake Erie R.R., 858 F. 2d 936, 942 (3d Cir. 1988).

Thus, unless there is "complete preemption," a court must determine whether a case "arises under" federal law sufficient to warrant removal. In Merrell Dow Pharmaceuticals, Inc. v. Thompson, the Supreme Court emphasized that the proper inquiry turns on whether the state action based complaint raises a substantial federal issue. 478 U.S. 804 (1986). Federal question jurisdiction exists if resolution of the substantial federal issue is necessary to the resolution of the pleaded state law claim. Id. at 804. In Merrell Dow, the plaintiffs brought multiple state law claims, including a claim for negligence *per se*, against a pharmaceutical company. As part of

that claim, plaintiffs alleged the defendant's failure to follow the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, et seq. (hereinafter "FDCA") amounted to a rebuttable presumption of negligence. In finding the defendant's removal of the action improper, the Supreme Court found that the plaintiffs' negligence action based in part on their allegation that the defendant violated a federal misbranding prohibition under the FDCA did not present a federal question. Id. at 807. The Supreme Court held that "a complaint alleging a violation of a federal statue as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under' . . . [§1331]." Id. at 817.

More recently, in Grable & Sons Metal Products, Inc. v Darue Engineering & Manufacturing, the Supreme Court clarified its holding in Merrell Dow and view of "arising under" jurisdiction. 545 U.S. 308 (2005). In Grable, the Supreme Court explained that federal jurisdiction may be proper over state law claims if "it 'appears from the [complaint] that the right to relief depends upon the construction or application of [federal law].'" Id. at 313 (internal citation omitted). Thus, Grable posed the following question:

> [D]oes a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.

Id. at 314. Thus, two prongs must be satisfied under Grable to determine if an issue presents a federal question: (1) the state law claim must "necessarily raise a stated federal issue"; and (2) federal jurisdiction must not upset the "balance of federal and judicial state responsibilities." Id. In other words, to find that a state-law claim implicates significant federal issues, the federal

interest at stake must be substantial. See id. The mere existence of a federal issue in a state law cause of action does not automatically create federal question jurisdiction. See id.

**Discussion**

Here, there is no serious dispute that a federal question is not presented on the face of the well-pleaded complaint. A plain reading of the complaint makes clear that plaintiff seeks relief under New Jersey statutory and common law. Plaintiff does not seek relief under the FDCA, the Medical Device Amendments of 1976, 21 U.S.C. § 301 et seq. ("MDA") or any other federal statute. Nor can this Court find that the doctrine of "complete preemption" applies here. In enacting the FDCA, Congress did not intend to occupy the regulatory field with respect to medical devices and create a superseding cause of action under the federal law. Stated differently, because the FDCA does not create or imply a private right of action for individuals injured as a result of violations of the federal Act, there is no "complete preemption." See Merrell Dow, 478 U.S. at 807, 817; Collins v. Baxter Healthcare Corp., 949 F. Supp. 1143 (D.N.J. 1996).

Rather, Count VII of plaintiff's complaint is a claim for punitive damages under the NJPDA. In enacting the statute, the New Jersey Legislature intended to restrict availability of punitive damages, which falls within the legislature's prerogative to regulate the public's health and safety. See Smith v. Whitaker, 160 N.J. 221, 248 (N.J. 1999); In Re: Aredia and Zometa Products Liability Litigation, 2007 WL 649266 *1, 11 (M.D. Tenn. 2007). Section 2A:15-5.11 of the NJPDA requires a plaintiff to include an award of punitive damages as a specific prayer for relief in the complaint. Although the NJPLA (Count VI of plaintiffs complaint) imposes a ban on punitive damages for FDA-approved products, the statute provides an exception to the

general rule if the plaintiff can demonstrate that the defendant knowingly misrepresented or withheld information from the FDA. N.J.S.A. § 2A:58C-5(c). That is what plaintiff alleges here – that defendants "intentionally failed to conform to state and federal regulatory and statutory guidelines related to the studying, testing, designing... of patches for hernia repair." Complaint ¶50(a). Based on that specific allegation, defendants allege in their removal petition that "this claim triggers federal preemption."

In support of removal, defendants rely on Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 347 (2001), and two lower court opinions interpreting Buckman. However, because Buckman and its progeny address ordinary preemption, as opposed to "arising under" jurisdiction, they are not controlling on the jurisdictional issue before the court.

In Buckman, the plaintiffs claimed that but-for the defendant's fraudulent statements to the FDA, the orthopedic bone screws at issue would not have been approved by the FDA, and the plaintiffs would not have been injured. The Court noted that the plaintiffs' state law fraud-on-the-FDA claims relied on the MDA regulations (as opposed to state law) as a critical element of their cause of action. The Supreme Court found that "[p]olicing fraud against federal agencies is hardly a field which the States have traditionally occupied." Id. at 347. Such claims conflict with the MDA, and thus, they are preempted since the federal statutes empower the FDA, not individual consumers, to punish and defer fraud against the agency. Id.

Other courts have considered Buckman preemption in the context of a state punitive damage statute, much like the one at issue here. Garcia v. Wyeth-Ayerst, 385 F. 3d 961 (6th Cir. 2004), involved a Michigan statute which immunizes drug manufacturers from liability from damages involving FDA approved products, except where the plaintiff proves that information

knowingly was misrepresented to or withheld from the FDA. The Sixth Circuit reasoned that although the case before it involved proof of fraud as a predicate to punitive damages (as opposed to proof of fraud for liability), "such a state court proceeding would raise the same inter-branch medding concerns that animated Buckman." Id at 966 (citations omitted). In finding that the statute was invalid yet severable, the Sixth Circuit made a distinction between findings made by the FDA and findings made by the state court.

A similar conclusion was reached by the District Court for the Northern District of Arizona in Kobar v. Novartis Corporation, 378 F. Supp. 2d 1166 (N.D. Ariz. 2005). As in New Jersey, the Arizona Act immunizes pharmaceutical manufacturers from liability for punitive damages for injures resulting from FDA approved products, with an exception where plaintiff can show fraud on the FDA. Following the analysis of Garcia, the District Court held that "both a common law fraud on the FDA claim and an immunity statute that requires a plaintiff to prove fraud on the FDA in order to collect punitive damages places state courts, as finders of fact, in the uncomfortable and difficult position of having to answer the question of what role, if any, the allegedly withheld information played in the complicated approval process." Id. The court also noted that "the potentially deleterious effects that could flow from Buckman fraud on the FDA claims could also occur in the context of Arizona's immunity law." Id.

Most recently, in Desiano v. Warner-Lambert & Co., the Second Circuit reached a different conclusion, holding that same Michigan statute considered by Garcia was not preempted by the FDA. 467 F.3d 85 (2d Cir. 2006). Central to the Court's analysis was its conclusion that the immunity granted by the state statute was an affirmative defense, as opposed to an element of plaintiff's case: "[all of the claims advanced by [plaintiffs] in this case are

premised on traditional duties between a product manufacturer and Michigan consumers. None of them derives from, or is based on, a newly-concocted duty between a manufacturer and a federal agency." Id at 94-95. The court concluded that "until and unless Congress states explicitly that it intends invalidation of state common law claims merely because issues of fraud may arise in the trial of other claims, we decline to read general statutes like the FDCA and the MCA as having that effect." Id. at 96.

The issue here is not, as defendants allege, whether there is Buckman preemption, but whether plaintiff's claim "arises under" federal law. See Grable & Sons Metal Prod. Inc, 544 U.S. at 311-12. Here, plaintiff's entitlement to punitive damages under the NJPDA and NJPLA does not depend on the resolution of a federal question sufficiently substantial to arise under federal law within the meaning of 28 U.S.C. § 1331. Indeed, plaintiff's NJPLA and NJPDA claims parallel federal safety requirements and is premised on a duty between defendants, as manufacturers of the alleged defective product, and plaintiffs, as New Jersey consumers. Liability under the NJPLA rests exclusively on state law. The issue of punitive damages is not even reached until liability is established. If the trier of fact reaches plaintiff's claim for punitive damages under the NJPLA and NJPDA, the reviewing court must consider all relevant evidence, as set forth in section 2A:15-5.12 of the NJPDA, such as malice, materiality, causation and relevance. Such discreet findings by a state court do not implicate substantial federal issues. See Grable, 545 U.S. at 314; Merrell Dow, 478 U.S. at 814. Although the state court's assessment of whether to award punitive damages may turn on issues of fraud and defendants' anticipated affirmative defense of immunity, this Court finds that such issues are insufficiently substantial to confer federal jurisdiction. Therefore, Grable's first prong is not satisfied: the state law claim for punitive damages does not necessarily

raise a substantial federal issue.

As to the second part of the Grable analysis, this Court is satisfied that expanding "arising under" jurisdiction for a state law tort action would disturb the "congressionally approved balance of federal and state judicial responsibilities." See Grable, 545 U.S. at 314. As was recently expressed by Magistrate Judge Campbell in analyzing this precise issue:

> Because of its important role in state regulation of matters of health and safety, common law liability cannot be easily displaced in our federal system. The object of the New Jersey legislature in creating this statute was to regulate and restrict when Plaintiffs could recover punitive damages, which falls squarely within its prerogative to regulate matters of health and safety. Where Plaintiffs seek punitive damages under the New Jersey statute in either state or federal courts and the issue of fraud-on-the-FDA is raised, the potential would exist for the FDA's personnel to be drawn into those controversy on a case-by-case basis over and over again. This would generate a wholly impractical solution.

In Re: Aredia and Zometa Products Liability Litigation, 2007 WL 649266 *at 11.

Morever, the statutory scheme designed by the New Jersey legislature embodies traditional tort law considerations and is not premised exclusively on federal disclosure requirements. The conduct must be proven by clear and convincing evidence and the material withheld must be "material and relevant to the harm...." N.J.S.A.§ 2A:58C-5(c). Because plaintiff's claims rest almost entirely on traditional state tort law concepts, expanding "arising under" jurisdiction here would infringe on an area traditionally left to the state. As such, under the second Grable prong, this Court could not serve as a proper federal forum for the instant case without disturbing "Congress's intended division of labor between state and federal courts."[1] 545 U.S. at 319.

[1] One point of clarification. This Court finds only that there is no "arising under" jurisdiction which permits removal of this case. This Court does not reach the issue of whether plaintiff's state law claim for punitive damages is preempted under Buckman. Nor does

**Conclusion**

For the forgoing reasons, this Court respectfully recommends that plaintiff's motion to remand be granted.

The parties have ten (10) days from receipt hereof to file and serve objections.

Respectfully submitted,

*s/Madeline Cox Arleo*
**MADELINE COX ARLEO**
**United States Magistrate Judge**

Dated: June 18, 2007
Original: Clerk
cc: Hon. Susan D. Wigenton, U.S.D.J.
File

---

deferring that issue to the state court lead to the conclusion as suggested by defendants that "consistent federal treatment of the important issue of Buckman preemption calls for federal jurisdiction in this case." (Def. Br. at 10). Defendants are not prevented from raising its preemption argument as a defense to plaintiff's punitive damages claim. However, as previously stated herein, preemption cannot form the basis for removal of this case. See Caterpillar, Inc. v. Williams, 482 U.S. 386 (1987); Dawson, 145 F. Supp. 2d at 568.