**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **In re KUGEL MESH HERNIA PATCH PRODUCTS LIABILITY LITIGATION** | § § § | **CASE NO.: 07-1842-ML** |
| **THIS DOCUMENT RELATES ONLY TO *VON ESSEN V. DAVOL Et. Al.*** | § § § | ***Von Essen v. Davol Inc., et al.* C.A. 07-1850** |

**C.R. BARD, INC. AND DAVOL INC.'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING PLAINTIFF'S MOTION TO REMAND IN *VON ESSEN V. DAVOL ET AL.***

Pursuant to Federal Rule of Civil Procedure 72(b), C.R. Bard, Inc. and Davol Inc. ("Davol") submits its Objections to District Court of New Jersey Magistrate Judge Arleo's June 18, 2007 Report and Recommendation ("Recommendation") that plaintiff's Motion to Remand be granted.[1] The Recommendation should be rejected because it: (1) concludes that the issue of whether Davol defrauded the Food and Drug Administration in its regulatory submissions is *not* a substantial federal question, despite controlling case law to the contrary, and (2) argues, also contrary to controlling case law, that allowing federal jurisdiction would disturb the congressionally-approved balance between state and federal judicial responsibilities. This Court should deny plaintiff's motion to remand.

[1] Plaintiffs moved to remand this case on October 31, 2006. Following briefing, the magistrate judge issued a Recommendation on June 18, 2007. On June 28, 2007, the Joint Panel on Multidistrict Litigation's Transfer Order was entered in this Court, depriving the District of New Jersey of any further jurisdiction to decide plaintiffs' motion to remand. Davol submits these objections for the benefit of the transferee Court, should it wish to consider Magistrate Arleo's Recommendation when it takes up the motion to remand at the appropriate time in the MDL proceedings. This opposition is timely filed in terms of the original 10-day requirement for objections to a magistrate's recommendations. For the Court's convenience, the relevant papers (complaint, removal notice, remand motion, opposition thereto, reply to opposition, and the magistrate's recommendation) are attached hereto as Att. A.

## ARGUMENT

The Recommendation correctly acknowledges that the Court's remand analysis is governed by *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), which supersedes and clarifies the *Merrell Dow Pharma, Inc. v. Thompson*, 478 U.S. 804 (1986) case frequently cited both by the plaintiff in the motion to remand and by the magistrate in the Recommendation. *Grable* sets the standard for determining whether a state-law claim creates federal question jurisdiction: "arising under" jurisdiction exists if "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. The Recommendation errs in applying both prongs of this analysis, the substantial federal issue prong and the balance of federal and state responsibilities prong.

### 1. New Jersey's Statutory Ban On Punitive Damages As To FDA-Approved Devices Raises A Substantial Federal Question.

The case law is clear that a state-law claim that requires resolution of an issue governed by FDA regulation presents a substantial federal question. *See Defendants' Remand Opp.* at 10-11 (Att. A). First among them is *Buckman Co. v. Plaintiffs' Law Committee*, 531 U.S. 341 (2001), which establishes that the FDA's interest in regulating manufacturer fraud is "*inherently federal* in character." 531 U.S. at 347 (emphasis supplied). The Supreme Court held that a claim that a defendant knowingly misrepresented information to the FDA was "inherently federal in character because the relationship [between FDA and a manufacturer] originates from, is governed by, and terminates according to federal law." *Id.* at 345-46. The Court rejected plaintiffs' argument that their claims sounded solely in state tort law because "the existence of these federal enactments is a critical element in their case." *Id.* at 353.

*Buckman* does not stand alone. Multiple cases interpreting state statutes similar to that at issue here have concluded that statutes shielding a drug or device manufacturer from liability or damages unless the plaintiff can show that the FDA was lied to present critical federal issues. *See Defendants' Remand Opp.* at 10-11 (Att. A); *see also Kobar v. Novartis Corp.*, 378 F. Supp. 2d 1166, 1171-72 (N.D. Ariz. 2005) (in case involving an Arizona statute barring punitives against a pharmaceutical manufacturer, holding that plaintiffs' invocation of an exception based on knowingly withholding information from or misrepresenting information to the FDA triggers *Buckman* preemption); *Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 966 n.2 (6th Cir. 2004) (finding Michigan statute immunizing pharmaceutical makers from liability implicated the concerns raised in *Buckman*); *Henderson v. Merck & Co., Inc.*, No. 04-CV-05987-LDD, 2005 WL 2600220, at *11 (E.D. Pa. Oct. 11, 2005) (interpreting Michigan statute, following *Garcia* and *Buckman*). The issue now before the Court is *not* whether plaintiffs' punitive damages claim is preempted, but the simpler one of whether that claim necessarily presents a substantial federal question. The case law shows that it does.

In the light of this case law, the Recommendation's conclusion that the New Jersey Punitive Damages Act "rests exclusively on state law," Recommendation at 8, cannot be sustained. Any confusion on this point has been cleared up by the New Jersey Supreme Court, which, in a recent choice-of-law ruling, recognized that in enacting the Punitive Damages Act, the New Jersey legislature intended to "cede to FDA regulation some of this State's interest in policing local [FDA-regulated] manufacturers . . . ." *Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767, 774 (N.J. 2007).[2]

[2] *Rowe* was decided after the briefing of this matter was concluded.

Lastly, the Recommendation erroneously concludes that the necessity of demonstrating fraud on the FDA to win a punitive damages award against a device manufacturer does not present a substantial federal question, because there are other elements, which must also be shown. These other elements – materiality, malice, causation, and relevance – are the commonplace elements of any punitive damages claim and should have no effect on the analysis. As *Rowe* instructs, the requirement of proving fraud on the FDA is the *sine qua non* of plaintiff's punitive damages claim, not just one of a number of equally-significant elements. *Id.* at 773 ("the [NJPLA] does create a presumption of adequacy *rather than simply recognizing FDA approval as one factor to be considered* . . . .) (emphasis supplied).

It is clear from the statute and its interpretation in *Rowe* that plaintiff is required to prove that Davol actually defrauded the FDA in order to be entitled to punitive damages under New Jersey law. It is equally clear from *Buckman* and the cases interpreting similar state statutes that such a proof presents a substantial federal question.

**2. Finding Federal Jurisdiction Cannot Disrupt An Already Resolved Question As To the Proper Balance Between Federal and State Judicial Interests.**

In addressing *Grable*'s second prong, the Recommendation concludes that federal jurisdiction over this case would disturb the balance of federal and state judicial responsibilities." Recommendation at 9.[3] But *Rowe* makes clear that the New Jersey legislature intended to "cede

[3] In making this finding, the Recommendation borrows heavily from Judge Campbell's adoption of Magistrate Judge Brown's recommendation in *In re Aredia and Zometa Products Liability Litigation*, No. 3:06-MD-1760, 2007 WL 649266 (M.D. Tenn. Feb. 27, 2007). But the recommendation in that case turned on the Magistrate's conclusion that allowing a plaintiff to attempt to prove fraud on the FDA would so impair the FDA's regulatory mission that the Punitive Damages Act must be read to allow punitive damages only where FDA itself has found that it has been defrauded. *Id.* at *9. Were it to be otherwise, the magistrate wrote, "Where Plaintiffs seek punitive damages under the New Jersey statute in either state or federal courts and the issue of fraud-on-the-FDA is raised, the potential would exist for the FDA's personnel to be drawn into those controversy on a case-by-case basis over and over again. This would generate a

to FDA regulation some of this State's interest in policing local [FDA-regulated] manufacturers." *Rowe*, 917 A.2d at 774. It should be the exceptionally rare case where a plaintiff believes that she has a good-faith basis to seek to overcome the basic presumption against punitive damages in medical device and pharmaceutical cases, enacted by the legislature to protect device and drug manufacturers. In those exceptional cases where the plaintiff has a good-faith basis to argue that "the product manufacturer *knowingly withheld or misrepresented* information [from/to the FDA that was] required to be submitted under the agency's regulations," N.J.S.A. § 2A:58C-5(c), it will not disturb the balance between the state and federal courts for federal jurisdiction to apply.

Date: July 5, 2007

Respectfully submitted,

Joe G. Hollingsworth
Kirby T. Griffis
Spriggs & Hollingsworth
1350 I Street N.W.
Washington, DC 20005
(202) 898-5800
(202) 682-1639 (fax)

Mark T. Nugent, 2637
Morrison Mahoney LLP
121 South Main Street, Suite 600
Providence, RI 02903

Attorneys for Defendants
C.R. BARD, INC. and DAVOL INC.

---

wholly impractical solution." *Id.* Because of his conclusion that the statute could only apply where the FDA has found that it has been defrauded (which was not true in the case before him and is not true here), and thus that the *plaintiff* would never be put in the position of attempting to prove that FDA was defrauded, he found that no substantial federal question existed and remanded the case. The subsequently decided *Rowe* case makes clear that the plaintiff must prove fraud on the FDA, and that the premise of the *Aredia* decision is invalid.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 2007, the foregoing was served upon the following counsel via first-class mail.

Derek T. Braslow, Esq.
Pogust & Braslow, LLC
161 Washington Street, Suite 1520
Conshohocken, PA 19428

Dana Alan Gausepohl

**ATTACHMENT A**

POGUST & BRASLOW, LLC
Harris L. Pogust, Esq.
Derek T. Braslow, Esq.
Robert N. Wilkey, Esq.
Eight Tower Bridge
161 Washington Street, Suite 1520
Conshohocken, PA 19428
(610) 941-4204 Ph.
(610) 941-4245 Fax
Attorneys for Plaintiff

RECEIVED/FILED
Superior Court of New Jersey
AUG 2 1 2006
VIL CASE MANAGEMENT
UNION COUNTY

| | |
|---|---|
| JENINE VON ESSEN<br>9935 Wingtip Rd.<br>Philadelphia, PA 19115<br><br>Plaintiff, | SUPERIOR COURT OF NEW JERSEY<br><br>UNION COUNTY – LAW DIVISION<br><br>Docket No. UNN-L-2973 06<br><br>Civil Action |
| C.R. BARD, INC.<br>730 Central Avenue<br>Murray Hill, New Jersey, 07974<br><br>AND<br><br>DAVOL, INC.<br>100 Sockanossett Crossroad<br>P.O. Box 8500<br>Cranston, RI 02920<br>Defendants. | COMPLAINT AND JURY DEMAND |

## COMPLAINT

Plaintiff Jenine Von Essen ("Plaintiff"), residing at 9935 Wingtip Rd., Philadelphia, PA 19115, by her attorneys, POGUST & BRASLOW, LLC, as and for the Verified Complaint herein allege upon information and belief the following:

## NATURE OF ACTION

1. Plaintiff brings this action on behalf of herself for harms suffered as a patient, recipient, user, consumer of a defective Composix Kugel Mesh Patch product

(hereinafter "Patch"), designed, manufactured, produced, and distributed by Davol, Inc., (hereinafter "Davol") a wholly owned subsidiary of C.R. Bard, Inc. (hereinafter "C.R. Bard.").

**PARTIES**

2. At all time relevant herein, Plaintiff was a resident of the Commonwealth of Pennsylvania and currently resides in Pennsylvania.

3. Defendant Davol is a wholly owned subsidiary of C.R. Bard with its principal office and place of business at 100 Sockanosset Crossroad, P.O. Box 8500, Cranston, Rhode Island, 02920. Davol at all times relevant developed, produced, sold, and distributed hernia repair related products including but not limited to, the Patch, throughout the United States and the world and does substantial and continuing business in the State of New Jersey. Upon information and belief, Davol is licensed and registered to do business in New Jersey and obtained the benefits of the laws of New Jersey and profited from New Jersey commerce.

4. Defendant C.R. Bard is a New Jersey corporation with its principal office and places of business at 730 Central Avenue, Murray Hill, New Jersey, 07974, and at all times relevant developed, produced, sold, and distributed hernia repair related products including but not limited to, the Patch, throughout the United States and the world and does substantial and continuing business in the State of New Jersey. Upon information and belief, C.R. Bard is licensed and registered to do business in New Jersey and obtained the benefits of the laws of New Jersey and profited from New Jersey commerce.

**FACTS**

5. Plaintiff was born on September 25, 1946.

6. On December 18, 2005, Plaintiff was admitted to the hospital as a result of hernia related pain.

7. On or about December 22, 2005, Plaintiff underwent hernia repair surgery which involved, employed, utilized, and otherwise consisted of surgically using the Patch.

8. On or about December 22, 2005, Defendants by way of the Federal Drug Administration ("FDA"), initiated a Class I recall for certain Patches, but upon information and belief, not the Patch surgically used in Plaintiff's hernia repair surgery.

9. On December 27, 2005, Davol notified consumers of the Class I recall.

10. On January 7, 2006, Plaintiff was re-admitted to the hospital as a result of complications relating to her hernia related surgery.

11. On March 24, 2006, Bard issued letters to health care providers.

12. On March 31, 2006, Defendants by way of the FDA, initiated an updated Class I recall to include all additional Patches.

13. On April 13, 2006, Plaintiff received notice from the hospital, explaining that the Patch used in her hernia surgery had been recalled due to a "memory recoil ring breakage" which can cause infections, perforations, and other complications. It was determined that because of Plaintiff's frail condition, the Patch should not be removed.

14. In May of 2006, Plaintiff began to feel pain and extreme discomfort in her hernia region. She also began to feel a wire pushing out of her body. Plaintiff was taken into surgery whereupon the defective Patch was surgically removed.

15. In June 2006, Plaintiff experienced additional complications, namely infection and blood clots stemming from her Patch removal wound site, requiring additional surgery, two additional hospitalizations, and medical treatment.

16. Plaintiff was also later required to go to the emergency room as a result of congestive heart failure and other significant complications as a result of the Patch removal and infection, again requiring additional surgery, hospitalization for approximately two weeks and medical treatment.

17. As a result of the Patch removal, Plaintiff is presently being treated for an open wound that requires continuous medical treatment and supervision.

18. Plaintiff has incurred severe pain, discomfort, fear, stress, and harm related to the removal of the Patch. Plaintiff continues to suffer severe pain, discomfort, fear, stress, and harm related to the removal of the Patch.

**COUNT I – NEGLIGENCE**

19. Plaintiff incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

20. Defendants knew or should have known, by the exercise of reasonable care or the application of reasonable, developed human skill and foresight, that: the Patch had a high risk of breakage, specifically that the "memory coil ring" upon being subjected to stress after placement in the intra-abdominal space posed a risk of breakage, separation, tearing, and splitting, resulting in extreme harm and risk to patients.

21. Defendants owed, inter alia, to Plaintiff the following duties to Plaintiff:

(a) to exercise reasonable care in ensuring that the Patch was designed, constructed, and composed, in a manner that would not subject it to breakage, separation, tearing, and splitting, resulting in extreme harm and risk to patients;

(b) to exercise reasonable care in ensuring that the Patch would not result in injury or harm;

(c) to adequately warn Plaintiff and her treating physicians, of the risks of memory recoil ring breakage associated with the Patch.

22. Defendants breached said duties by the manner in which they studied, tested, designed, developed, manufactured, inspected, produced, advertised, marketed, promoted, distributed, and/or sold the Patch.

23. As a direct and proximate result of the aforesaid breaches, Plaintiff's Patch installed as part of hernia repair surgery, was caused to break, separate, tear, and split, resulting in extreme harm and risk to Plaintiff, and Defendants are liable to Plaintiff.

*WHEREFORE*, Plaintiff claims of Defendants compensatory damages, punitive damages, interest and allowable costs of suit.

**COUNT II – NEGLIGENCE *PER SE***

24. Plaintiff incorporates by reference all of the paragraphs of this Complaint as if fully set forth herein.

25. Defendants owed a duty to Plaintiff to adequately warn her, and her treating physicians, of the risks of breakage, separation, tearing, and splitting associated with the Patch, and the resulting extreme harm and risk to patients.

26. Defendants breached said duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Patch, including but not limited to N.J. Stat. Ann. § 56:8-1 *et. seq.* and N.J. Stat. Ann. § 2A: 58C-1; 58C-8.

27. As a direct and proximate result of the aforesaid breaches, the Patch utilized in Plaintiff's hernia repair surgery was caused to break, resulting in Plaintiff suffering much pain and harm, and Defendants are liable to Plaintiff.

*WHEREFORE*, Plaintiff claims of Defendants compensatory damages, punitive damages, interest and allowable costs of suit.

**COUNT III - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

28. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

29. Plaintiff suffered severe emotional distress, which was the direct and proximate result of Defendants extreme, outrageous, intentional, willful, and reckless conduct in studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of the Patch for hernia repair.

30. Plaintiff suffered severe emotional distress, which included but was not limited to severe and disabling emotional and physical distress, the direct and proximate result of Defendants' extreme, outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Patch for hernia repair, in complete and reckless disregard of safety to Plaintiff.

31. As a result of the foregoing, Defendants are liable to Plaintiff.

*WHEREFORE*, Plaintiff claims of Defendants, compensatory damages, punitive damages, interest and allowable costs of suit.

**COUNT IV – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

32. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

33. Plaintiff suffered severe emotional distress, which was the direct and proximate result of Defendants negligent conduct in studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of the Patch for hernia repair.

34. Plaintiff suffered severe emotional distress, which was the direct and proximate result of Defendants negligent conduct in failing to adequately and safely design and construct an effective and safe Patch for hernia repair.

35. As a result of the foregoing, Defendants are liable to Plaintiff.

*WHEREFORE*, Plaintiff claims of Defendants, compensatory damages, punitive damages, interest and allowable costs of suit.

**COUNT V - VIOLATION OF NEW JERSEY'S CONSUMER FRAUD ACT**
*(N.J. Stat. Ann. § 56:8-1 et. seq.)*

36. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

37. Defendants are merchants with respect to its studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Patches for hernia repair.

38. Defendants knowingly committed unfair and deceptive trade practices in its studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Patches for hernia repair.

39. Defendants knowingly committed unfair and deceptive trade practices in failing to adequately and safely design and construct an effective and safe Patch for hernia repair.

40. When Defendants were studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Patches for hernia repair, Defendants knew or reasonably should have known that some Patches were at risk, specifically that the "memory coil ring" upon being subjected to stress after placement in the intra-abdominal space, posed a significant risk of breakage, separation, tearing, and splitting, resulting in extreme harm and risk, even death to patients.

41. At no time prior to December 2005, did Defendants inform the FDA of its knowledge concerning the dangers of some adults who were being distributed such Patches for hernia repair.

42. At no time prior to December 2005 or prior to Plaintiff's hernia repair, did Defendants inform the public at large of its knowledge concerning the dangers to some adults who were being distributed such Patches for hernia repair.

43. Defendants also failed to give adequate warnings regarding the use and potential problems with such Patches used for hernia repair.

44. Defendants' actions complained of herein occurred in the conduct of trade or commerce, and all of the conduct alleged herein occurred in the course of Defendants' business.

*WHEREFORE*, Plaintiff claims of Defendants, compensatory damages, punitive damages, interest and allowable costs of suit.

**COUNT VI - VIOLATION OF NEW JERSEY'S PRODUCTS LIABILITY ACT**
*(N.J. Stat. Ann.. § 2A: 58C-1; 58C-8)*

45. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

46. Defendants were careless, negligent, breached their duties and obligations owed to plaintiff by various sections of the New Jersey's Product Liability Act, N.J.S.A. § 2A: 58C-1; 58C-8, and are liable for causing injuries to plaintiff for the following reasons:

a) selling a product in a defective condition;

b) selling a product which was unreasonably dangerous to the user;

c) failing to supply adequate warnings with the product;

d) failing to provide accurate and truthful instructions to be followed with regard to the utilization of this product;

e) selling a product which was not safe for its intended use;

f) selling a product which was lacking of one or more elements necessary to make it safe for its intended use;

g) manufacturing a product which was defective and which could cause injury to the user;

h) designing a product which was defective and which could cause

injury to the user;

i) distributing a product which was defective and could cause injuries to a user;

j) failing to see that ultimate users were advised of the dangers of said product;

k) failing to exercise reasonable care in the design of this product;

l) failing to exercise reasonable care in the marketing of this product;

m) failing to adequately and properly test said product;

n) failing to use reasonable care under the circumstances;

o) delivering a product which was defective and could cause injury to the user;

p) producing a product which was defective and could cause injury to the user;

q) producing a product with component parts that defendant knew or should have known increased the risk of harm to the user;

r) supplying a product which was defective and could cause injury to the user;

s) engaging in other acts regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Patches for hernia repair as will be learned in discovery;

t) failing to employ and adhere to a comprehensive and adequate and safe "memory coil ring" or similar ring that could withstand the stress of placement in the intra-abdominal space;

47. As a result of Defendants' violation of the New Jersey's Products Liability Act, Plaintiff was caused to sustain serious emotional and physical harms.

WHEREFORE, Plaintiff claims of Defendants, compensatory damages, punitive damages, interest and allowable costs of suit.

**COUNT VII -- PUNITIVE DAMAGES UNDER THE NEW JERSEY PUNITIVE DAMAGES ACT**
(*N.J.S.A.* § 2A: 15-5.9; § 2A:15-5.12)

48. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

49. Defendants' actions as set forth above were intentional, wanton, willful and outrageous. Defendants were grossly negligent, and acted with reckless disregard of and with deliberate, callous and reckless indifference to the rights, interests, welfare and safety of Plaintiff and all others similarly situated.

50. Defendants' intentional, wanton, willful and outrageous actions consisted of, but are not limited to:

a. intentionally failing to conform to state and federal regulatory and statutory guidelines related to the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Patches for hernia repair;

b. intentionally failing to disclose that such Patches used for hernia repair, were subject to an increased risk of breakage, separation, tearing, and splitting, resulting in extreme harm and risk to patients;

51. By reason of the wanton, willful and outrageous conduct of Defendants, as aforesaid, Plaintiff was caused to sustain said physical and emotional injuries and harms.

52. By reason of the wanton, willful and outrageous conduct of Defendants pursuant to the Restatement of Torts, § 908(1) and the New Jersey Punitive Damages Act, N.J.S.A.§ 2A: 15-5.9; § 2A:15-5.12, Defendants are liable for punitive damages and relief as this Court deems just.

*WHEREFORE*, Plaintiff claims of Defendants, compensatory damages, punitive damages, interest and allowable costs of suit.

BY: ______________________

Harris L. Pogust, Esquire
Derek T. Braslow, Esquire
Robert N. Wilkey, Esquire
POGUST & BRASLOW, LLC
161 Washington Street
Suite 1520
Conshohocken, PA 19428

DATED: August 16, 2006

**JURY TRIAL DEMANDED**

Please take notice that the Plaintiff hereby demands a trial by jury as to all issues in the above matter.

BY: ______________________

Harris L. Pogust, Esquire
Derek T. Braslow, Esquire
Robert N. Wilkey, Esquire
POGUST & BRASLOW, LLC
161 Washington Street
Suite 1520
Conshohocken, PA 19428

DATED: August 16, 2006

**JURY TRIAL DEMANDED**

Please take notice that the Plaintiff hereby demands a trial by jury as to all issues in the above matter.

BY: ______________________
Harris L. Pogust, Esquire
Derek T. Braslow, Esquire
Robert N. Wilkey, Esquire
POGUST & BRASLOW, LLC
161 Washington Street
Suite 1520
Conshohocken, PA 19428

DATED: August 16, 2006

RECEIVED-CLERK
U.S. DISTRICT COURT

2005 OCT -2 P 3:39

**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444
-and-
**SPRIGGS & HOLLINGSWORTH**
1350 I Street, N.W., Ninth Floor
Washington, DC 20005
(202) 898-5800

*Attorneys for Defendants*
*C.R. Bard, Inc. and Davol Inc.*
DC-3417

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JENINE VON ESSEN, Plaintiff, | ) | |
| v. | ) | Civil Action No.__________ |
| DAVOL INC., a Rhode Island corporation; C. R. BARD, INC., a New Jersey corporation, Defendants. | ) | **NOTICE OF REMOVAL WITH COPIES OF ALL PROCESS AND PLEADINGS IN STATE COURT AND CERTIFICATION OF SERVICE** |

TO: THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

Defendants C.R. Bard, Inc. ("Bard") and Davol Inc. ("Davol"), by their undersigned counsel, hereby remove the above-captioned matter from the Superior Court, Law Division, Union County, New Jersey, to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446. In support of removal, Bard and Davol respectfully state:

1. Plaintiff filed this action in the Superior Court, Law Division, Union County, New Jersey, on August 21, 2006. Bard was served on September 28, 2006, and, on information and belief, Davol was served on or after September 2, 2006.[1]

2. As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Bard and Davol have satisfied the procedural requirements for removal, and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1441(b) & (c).

## I. Bard and Davol Have Satisfied the Procedural Requirements for Removal

3. Removal is timely. Bard and Davol were served with a copy of the Complaint on or after September 2, 2006. *See* Att. A (Copy of all Process, Pleadings, and Orders served upon Bard and Davol, including the Summons and Complaint). This Notice of Removal is being filed within 30 days of the first date on which Bard and Davol may have received a copy of the Complaint through service, and so is timely pursuant to 28 U.S.C. § 1446(b).

4. No further proceedings have been had in the state court action.

5. No previous application has been made for the relief requested herein.

6. A copy of the written notice required by 28 U.S.C. § 1446(d) is attached as Att. B and is being filed in the Superior Court, Law Division, Union County, New Jersey and served on Plaintiff.

[1] Plaintiffs mailed a copy of the summons and complaint to "Davol, Inc." by certified mail, and have informed counsel for Davol that they received a certified return that shows that the package was delivered to Davol on September 2, which is a Saturday. Plaintiffs did not address the package to an officer, general manager, or registered agent of Davol, and at this time Davol does not know on what date (if ever) an officer, general manager, or registered agent at Davol saw the summons and complaint. As this notice of removal is filed within 30 days of September 2, however, analysis of these issues is not necessary.

## II. Removal is Proper in This Case

7. This Court has federal question jurisdiction under 28 U.S.C. § 1331. Plaintiff's claim requires resolution of issues premised on the application of federal law and regulations. Accordingly, federal issues are actually in dispute, the federal issues are substantial, and the exercise of jurisdiction by this Court is consistent with congressional judgment about the sound division of labor between the state and federal courts. *See, e.g., Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg*, 545 U.S. 308, 125 S.Ct. 2363, 2366-67 (2005) (holding that federal question jurisdiction exists notwithstanding the fact that Congress did not provide a private right of action in the federal statute forming the basis of the substantial federal question).

8. The United States Supreme Court's decision in *Grable* held that federal question jurisdiction did not require the plaintiff to have asserted a federal cause of action. A case asserting only state law causes of action is removable if it raises a substantial federal question. *See Grable*, 125 S.Ct. at 2369-71.

9. Plaintiff's claim for punitive damages raises a substantial federal question because plaintiffs base their claim for entitlement to punitive damages by asserting that Bard and Davol withheld material information from the FDA. Complaint ¶ 50.[2] This claim triggers federal preemption. *See, e.g., Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 343 (2001) (causes of action premised on allegation of fraud on the FDA are preempted).

10. The remaining claims are removable pursuant to 28 U.S.C. §§1367(a) & 1441(c).

11. For the foregoing reasons, this Court has jurisdiction over this matter.

[2] Bard and Davol take no position at this time on which state's punitive damages law applies to this case. Plaintiff explicitly invokes New Jersey punitives law, which bars punitive damages claims against a medical device manufacturer, but then incorporates federal law by providing for an *exception* to the bar where the manufacturer "knowingly withheld or misrepresented [material] information required to be submitted under the [FDA's] regulations." N.J.S.A. § 2A:58C-5(c).

WHEREFORE, Bard and Davol respectfully removes this action from the Superior Court, Law Division, Union County, New Jersey to this Court pursuant to 28 U.S.C. § 1441.

Date: October 2, 2006

Respectfully submitted,

David J. Cooner

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444
(973) 297-3960 (fax)

Of Counsel:

Kirby T. Griffis
Dana Alan Gausepohl
Spriggs & Hollingsworth
1350 I Street N.W.
Washington, DC 20005
(202) 898-5800
(202) 682-1639 (fax)

Attorneys for Defendants
C.R. BARD, INC. and DAVOL INC.

RECEIVED-CLERK
U.S. DISTRICT COURT

2006 OCT -2 P 3:39

**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444
-and-
**SPRIGGS & HOLLINGSWORTH**
1350 I Street, N.W., Ninth Floor
Washington, DC 20005
(202) 898-5800

*Attorneys for Defendants*
*C.R. Bard, Inc. and Davol Inc.*
DC- 3417

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JENINE VON ESSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.______________ |
| | ) | |
| DAVOL INC., a Rhode Island corporation; | ) | |
| C. R. BARD, INC., a New Jersey corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2006, the foregoing Notice of Removal was served upon the following counsel via first-class mail, in accordance with the New Jersey Rules of Court.

Derek T. Braslow, Esq.
Pogust & Braslow, LLC
161 Washington Street, Suite 1520
Conshohocken, PA 19428

____________________
David J. Cooner